**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| MARK J. PRINCE, | : | Case No. 1:13-cv-902 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| THE PROCTER & GAMBLE CO., *et al.*, | : | |
| | : | |
| Defendants. | : | |

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS (Doc. 6)**

This civil action is before the Court on Defendants' Motion to Dismiss (Doc. 6) and the parties' responsive memoranda (Docs. 7, 8, and 14).

Plaintiff's Complaint seeks: (1) an award of severance benefits for Defendants' alleged breach of fiduciary duty under the Employee Retirement Income Security Act of 1974 ("ERISA") because Plaintiff's "first line supervisor" allegedly failed to disclose that Defendants were seriously considering the Procter & Gamble Integrated Organization Voluntary Separation Plan (the "Plan") when Plaintiff submitted his notice of retirement; and (2) an award of statutory damages under 29 U.S.C. § 1132(c)(1)(B) for Defendants' alleged failure to provide all documents relevant to his claim for benefits under the terms of the Plan.   (Doc. 1 at 8-12; Doc. 7 at 21).

Defendants now move to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief can be granted.   (Doc. 6 at 1).

## I.    FACTS AS ALLEGED BY THE PLAINTIFF

For purposes of this motion to dismiss, the Court must: (1) view the claims in the light most favorable to Plaintiff; and (2) take all well-pleaded factual allegations as true. *Tackett v. M&G Polymers*, 561 F.3d 478, 488 (6th Cir. 2009).

Plaintiff was first employed by Defendant The Procter & Gamble Company ("P&G") on June 20, 1977.   (Doc. 1 at ¶ 7).   From 2010 through mid-2011, Plaintiff contemplated retirement from P&G.   (*Id.* at ¶¶ 9-10).   During this time frame, Plaintiff repeatedly "ask[ed] his first line supervisor the status of any upcoming voluntary separation plans and whether any such plan was under consideration or would be implemented in the near future."   (*Id.* at ¶ 10).   "During 2010 and into mid-2011, [Plaintiff]'s first line supervisor made such multiple appropriate inquiries with both Defendant P&G's Human Resources Department and [Financial Services and Solutions ("FSS")] Organization."   (*Id.* at ¶ 11).   "P&G's Human Resources Department and Defendant P&G' [s] FSS Organization responded to [Plaintiff]'s first line supervisor that at that point in time, there were no definitive plans to implement a voluntary separation plan." (*Id.* at ¶ 13).   As the Complaint acknowledges, no severance plan was under serious consideration at the time of these inquiries.   (*Id.*)

In June 2011, having heard nothing regarding "the likelihood or possibility of the implementation of a voluntary separation plan in the reasonably near future, [Plaintiff] decided to retire from Defendant P&G."   (*Id.* at ¶ 16).   On June 5, 2011, Plaintiff "submitted his written notice of intent to retire effective September 6, 2011."   (*Id.*)

Plaintiff's last day in the office was July 27, 2011. (Doc. 1-1 at 2). Plaintiff used his

accrued but unused vacation time to bridge the time from July 27, 2011 through September

6, 2011. (*Id.* at 2 n.1).

When announcing his intent to retire, Plaintiff asked "his first line supervisor that if

he (the supervisor) subsequently learned, prior to [Plaintiff]'s actual date of retirement, that

a voluntary separation plan was now under consideration or its implementation was

imminent, probable or a strong likelihood, he was to advise [Plaintiff] accordingly, so that

he could withdraw his intent to retire." (Doc. 1 at ¶ 17). Plaintiff's first line supervisor

agreed to Plaintiff's request. (*Id.*) Prior to his formal September 6, 2011 retirement,

Plaintiff heard nothing from Defendants, either directly or through his first line supervisor

or anybody else, as to the status of any pending voluntary separation plan. (*Id.* ¶ 18). In

October 2011, P&G announced that a voluntary separation plan was being implemented

effective November 1, 2011. (Id. at ¶ 20).

The Plan was adopted, effective November 1, 2011. (*Id.* at ¶ 31). The Plan

Document provides severance benefits to employees, active as of November 1, 2011,

"designated as eligible by The Company's Global Human Resources Officer," who:

- Terminate employment as part of a voluntary [reduction in force], in which their participation is accepted by the Company;

- Execute a separation package agreement that contains provisions in accordance with the terms of this Plan and includes certain employee commitments (including, but not limited to, a release of claims);

- Have a separation date that is agreed to by the Company;

- Continue to work or be available for work, as required by their managers, until the their scheduled separation date; and

- Are not subject to one of the below exclusions.

(Doc. 6-1 at 3). The Plan Document also expressly provides that:

In no event shall Plan Benefits be payable to you under the Plan in the event of:

- your unilateral, voluntary resignation;

- your Discharge for Cause;

- your failure to continue to work through your scheduled Last Day of Employment without the prior written approval of the Plan Sponsor;

- your failure to continue to perform all required duties of your position and to complete all required reporting and other documentation associated with such position through the scheduled Last Day of Employment as determined by your supervisor; or

- your acceptance of a transfer to (i) a facility or location owned, operated or managed by the Plan Sponsor or (ii) any other employment with the Plan Sponsor.

(*Id.* at 4).

Shortly after Plaintiff learned that P&G had announced a new voluntary separation plan in October 2011, he made an informal request that he be permitted to participate in the Plan. (Doc. 1 at ¶ 23). On July 17, 2012, Defendants advised Plaintiff that his request was denied because he was not an active P&G employee as of the November 1, 2011 implementation of the Plan. (*Id.*)

On October 5, 2012, Plaintiff, by his counsel, filed a written claim with Defendant The Procter & Gamble Health & Welfare Committee (the "Committee") for severance

benefits.   (Doc. 1 at ¶ 24; Doc. 1-1 at 1-14).   Although referencing the Plan Document,

Plaintiff's counsel did not argue that Plaintiff was entitled to benefits under the Plan's

terms; instead, counsel contended that the terms of the Plan Document should not apply to

Plaintiff because he "would have revoked his Notice" of intent to retire if he had learned

after June 5, 2011 of "serious consideration" of the adoption of the Plan by P&G's senior

managers.   (Doc. 1-1 at 4).

On October 24, 2012, the Committee sent a letter to Plaintiff's counsel denying

Plaintiff's claim for benefits under the terms of the Plan:

> The specific reason for denial of benefits is [Plaintiff] did not satisfy the
> required eligibility criteria to be entitled to severance benefits under the Plan.
> The Company's Global Human Resource Officer did not designate
> [Plaintiff] as eligible for coverage under the Plan; his employment did not
> terminate as part of a voluntary reduction in force; and he did not execute a
> separation package agreement that included the terms of the Plan and a
> release of claims.   Further, the Company had neither the Plan nor another
> severance benefit plan established or in place when [Plaintiff] notified the
> Company on June 5, 2011 of his intent to retire on September 6, 2011.

(Doc. 1 at ¶ 25; Doc. 1-1 at 15).

On November 15, 2012, Plaintiff's counsel requested in writing documentation

under 29 C.F.R. § 2560.503-1(h)(2)(iii) and the terms of the October 24, 2012 denial letter.

(Doc. 1 at ¶ 40; Doc. 1-1 at 44-46).   On January 29, 2013, Donald Willis responded in

writing, on behalf of the Plan, and provided each "document, record or other information"

that was "relevant" and subject to production under 29 C.F.R. §§ 2560.503-1(h)(2)(iii) &

(m)(8).   (Doc. 1 at ¶ 41; Doc. 1-1 at 48).

On April 5, 2013, Plaintiff's counsel submitted an appeal of the Committee's October 24, 2012 denial of Plaintiff's claim. (Doc. 1 at ¶ 26; Doc. 1-1 at 18). In the appeal, Plaintiff contended that, contrary to its terms, the November 1, 2011 Plan should be applied retroactively to earlier retirements because "the Plan was under serious consideration back on August 15, 2011, prior to the effective date of [Plaintiff]'s retirement on September 6." (Doc. 1-1 at 21).

On May 14, 2013, the Committee, applying the terms of the Plan Document to Plaintiff's appeal of his claim for Plan benefits, denied the appeal because the Plan's terms did not entitle Plaintiff to severance benefits:

> The specific reason for denial of benefits is that [Plaintiff] did not satisfy the required eligibility criteria to be entitled to severance benefits under the Plan. [Plaintiff]'s employment did not terminate as part of a voluntary reduction in force ("RIF") and he did not execute a separation agreement that included the terms of the Plan and a release of claims. Additionally, on June 5, 2011, [Plaintiff] unilaterally and voluntarily provided the Company with his intent to resign from the Company. Further, neither the Plan nor another severance benefit plan was established or in place at the time [Plaintiff] notified the Company of his intent to retire on September 6, 2011.

(Doc. 1 at ¶¶ 27-28; Doc. 1-1 at 42). This lawsuit ensued.

Count One of the Complaint purports to assert an ERISA claim for breach of fiduciary duty based on the alleged failure of Plaintiff's first line supervisor to advise him of the alleged "serious consideration" of the terms of the Plan by senior management subsequent to Plaintiff's June 5, 2011 notice of his intent to retire. (Doc. 1 at ¶¶ 29-37). Count Two purports to assert an ERISA claim under 29 U.S.C. §§ 1132, 1133 and 1135, per the Department of Labor ("DOL")'s implementing claims regulation, seeking relief for

the Committee's alleged failure to provide all materials defined as "relevant" in 29 C.F.R. § 2560.503-1(m)(8)(iii) following the initial administrative denial of Plaintiff's claim for benefits.   (*Id*. at ¶¶ 38-47).

The Complaint contains no claim "to recover benefits due to him under the terms of the [P]lan," ERISA § 502(a)(1)(B), codified at 29 U.S.C. § 1132(a)(1)(B), even though the DOL's claims regulation is designed to apply only to a claim "for benefits under the terms of the plan. …"  *Employee Retirement Income Security Act of 1974; Rules and Regulations for Administration and Enforcement; Claims Procedure*, 65 F.R. 70246, 70255 (Nov. 21, 2000).   Plaintiff seeks damages in the amount of one year's salary, unspecified "liquidated damages," and "other damages."   (Doc. 1 at 11-12).

## II.     STANDARD OF REVIEW

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) operates to test the sufficiency of the complaint and permits dismissal of a complaint for "failure to state a claim upon which relief can be granted."   To show grounds for relief, Fed. R. Civ. P. 8(a) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

While Fed. R. Civ. P. 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).   Pleadings offering mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"   *Id.* (*citing Twombly*, 550 U.S. at 555).

In fact, in determining a motion to dismiss, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation'[.]" *Twombly*, 550 U.S. at 555 (*citing Papasan v. Allain*, 478 U.S. 265 (1986)). Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Id.*

Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. A claim is plausible where "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief,'" and the Complaint shall be dismissed. *Id.* (*citing* Fed. R. Civ. P. 8(a)(2)).

### III.    ANALYSIS

#### A.    Count One

A viable fiduciary breach claim exists only where a fiduciary "responds to employee inquiries by representing it is not considering a change to its pension plan, if it is in fact giving 'serious consideration' to a change." *Mushalla v. Teamsters Local No. 863 Pension Fund*, 300 F.3d 391, 396 (3d Cir. 2002). Plaintiff's Complaint identifies no post-June 5, 2011 request by Plaintiff of any Defendant regarding whether a severance

package was under "serious consideration" and no misrepresentation by any Defendant. (*See* Doc. 1). "[B]ecause no general duty of disclosure exists under ERISA, [Plaintiff's] omission claims fail as a matter of law." *Shirk v. Fifth Third Bancorp*, No. 05-cv-049, 2009 U.S. Dist. LEXIS 24490, at \*56 (S.D. Ohio Jan. 29, 2009).

At most, the Complaint alleges that when Plaintiff "submitted his written notice of intent to retire, he stated to his first line supervisor that if he (the supervisor) subsequently learned, prior to [Plaintiff]'s actual date of retirement, that a voluntary separation plan was now under consideration or its implementation was imminent, probable or a strong likelihood, he was to advise [Plaintiff] accordingly, so that he could withdraw his intent to retire." (Doc. 1 at ¶ 17). The Complaint does not allege that the responses of Plaintiff's "first line supervisor" to Plaintiff's inquiries prior to Plaintiff's June 5, 2011 submission of his notice of retirement either misrepresented to, or concealed from, Plaintiff whether P&G was "seriously considering" adoption of the November 1, 2011 Plan, or that Plaintiff's first line supervisor ever learned that "a voluntary separation plan was now under consideration or its implementation was imminent, probable or a strong likelihood." (*See* Doc. 1). "It is not a violation of ERISA to fail to furnish information regarding amendments before these amendments are put into effect." *Stanton v. Gulf Oil Corp.*, 792 F.2d 432, 435 (4th Cir. 1985). Citing *Stanton* with approval, the 6th Circuit has held that "[a] *fortiori*, there can be no fiduciary duty to disclose the *possibility* of a future change in benefits," and that "[i]n the absence of inaccurate information, there was no breach of fiduciary duty." *Sprague v. GMC*, 133 F.3d 388, 406 (6th Cir.) (*en banc*), *cert. denied*, 524 U.S. 923 (1998).

The Complaint also ignores the distinction between settlor functions, such as the adoption, modification and termination of a plan, and fiduciary functions, such as communicating accurately regarding a plan that already has been adopted, in alleging that "Defendants, acting in concert with each other were individually fiduciaries and collectively the fiduciary of [the P]lan." (Doc. 1 at ¶ 31).[1]

First, in the absence of a false communication regarding an extant plan, no fiduciary duties exist that can be breached because there is "no authority justifying extending ERISA fiduciary standards to govern the conduct of a company in its decision as to whether and on what terms it should create an employee benefit plan." *Akers v. Palmer*, 71 F.3d 226, 231 (6th Cir. 1995), *cert. denied*, 518 U.S. 1004 (1996). Indeed, inasmuch as the Plan "did not come into existence until after [Plaintiff]'s retirement, [P&G] did not owe him any fiduciary duty concerning its benefits." *Beach v. Commonwealth Edison Co.*, 382 F.3d 656, 659 (7th Cir. 2004).

Moreover, the omissions and responses of Plaintiff's "first line supervisor" to Plaintiff, on which Count One is predicated, implicate no ERISA fiduciary duty on the basis of which Plaintiff can obtain relief. Under Sixth Circuit law, "once an ERISA beneficiary has requested information from an ERISA fiduciary who is aware of the beneficiary's status and situation, the fiduciary has an obligation to convey complete and

---

[1] *See, e.g., Levin v. Credit Suisse, Inc*., No. 11 Civ. 5252 (RJS), 2013 U.S. Dist. LEXIS 49820, at *8 (S.D.N.Y. Mar. 19, 2013) ("individuals who participate in merely 'ministerial' tasks such as advising participants of their rights are not plan fiduciaries"); *Stark v. Mars, Inc*., 790 F. Supp. 2d 658, 666-67 (S.D. Ohio 2011) (employer not fiduciary); 29 C.F.R. § 2509.75-8, Answer to Q. D-2 (plan eligibility communication not fiduciary function).

accurate information material to the beneficiary's circumstance, even if that requires conveying information about which the beneficiary did not specifically inquire." *James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439, 452 (6th Cir. 2009). Unlike the benefits personnel who held group meetings in *Pirelli*, the Complaint provides no basis for treating Plaintiff's first line supervisor as an ERISA fiduciary charged by the Committee to communicate with Plaintiff regarding severance benefits. In holding that the alleged representations of "an employee and/or agent" of an employer were insufficient to impose fiduciary duties on an employer, the Southern District found that to survive a dismissal motion, a complaint must contain allegations that "show that the defendant was acting in a fiduciary capacity when it made the challenged representations." *Stark*, 790 F. Supp. 2d at 666 (*citing Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 433 (6th Cir. 2006)); *accord Levin*, 2013 U.S. Dist. LEXIS 49820 at *8 ("individuals who participate in merely 'ministerial' tasks such as advising participants of their rights are not plan fiduciaries"). Indeed, the DOL's ERISA regulations recognize that an employee (such as Plaintiff's first line supervisor) is <u>not</u> engaged in a fiduciary function in "advising participants of their rights and options under the plan." 29 C.F.R. § 2509.75-8, Answer to Q. D-2.

Again, the Complaint contains no allegation that Plaintiff's first line supervisor, who was Plaintiff's sole "essential font of information," acted in a fiduciary capacity in communicating with Plaintiff. (Doc. 7 at 2). Accordingly, even if Plaintiff's first line supervisor had made a misrepresentation or omission, no breach of fiduciary duty would lie against any Defendant because Plaintiff's first line supervisor was not a fiduciary.

11

Moreover, even if Plaintiff's first line supervisor had not been Plaintiff's only point

of contact, Defendant P&G also did not act as a fiduciary because:

> [w]hen an employer adopts … a[n ERISA] plan its actions are analogous to
> that of settlor of a trust rather than that of trustee or fiduciary.  *Hughes
> Aircraft Co. v. Jacobson*, 525 U.S. 432, 443-44 (1999).   A[dopt]ing a plan is
> not an act of plan 'management' or 'administration,' and is accordingly not
> subject to fiduciary review.  *Lockheed Corp.* [*v. Spink*], 517 U.S. [882,] 890
> (1996).

*Coomer v. Bethesda Hosp., Inc*., 370 F.3d 499, 508-09 (6th Cir. 2004); *accord Bailey v.

United States Enrichment Corp*., 530 Fed. Appx. 471, 477 (6th Cir. 2013) (affirming

dismissal of benefits and fiduciary breach claims predicated on adoption/amendment of

ERISA plan); *Detroit Terrazzo Contrs. Ass'n v. Bd. of Trs. of the B.A.C. Local 32 Ins.

Fund*, 71 Fed. Appx. 539, 542 (6th Cir. 2003) (same).

Furthermore, Defendant the Plan cannot be a fiduciary of itself, as ERISA defines a

"fiduciary" as separate from the relevant plan so that "it is inconceivable that the … Plan

… can be deemed to be its own administrator."   *Compare* 29 U.S.C. § 1002(1) *with* 29

U.S.C. § 1002(21); *Gillespie v. Liberty Life Assur. Co.*, No. 1:10-cv-388, 2011 U.S. Dist.

LEXIS 13295, at *7 (W.D. Mich. Feb. 11, 2011).

Finally, the Complaint contains no allegation that Defendant the Committee ever

responded erroneously or omitted to respond to any request from Plaintiff whatsoever.

(*See* Doc. 1).

While Plaintiff asserts that after he "has engaged in full discovery, he will be in far

better position to analyze" Defendants' status as ERISA fiduciaries and what was said by

12

and to Plaintiff's first line supervisor, such an exploratory expedition cannot be predicated

on conclusory allegations alone:

> The sheer possibility exists that [P&G] acted in a way that would have
> allowed [Plaintiff] to hold it liable for [benefits].   Discovery would have
> allowed [Plaintiff] to determine if this sheer possibility could have been an
> actuality.   But under *Iqbal*, a complaint cannot survive a motion to dismiss –
> and plaintiffs cannot get discovery – unless the complaint shows that the
> defendant's wrongdoing is plausible, not just possible.

*Barney v. PNC Bank*, 714 F.3d 920, 929 (6th Cir. 2013).   Consequently, a breach of

fiduciary duty claim cannot be maintained against any Defendant.

As a result the above, Count One is appropriately dismissed.

**B.     Count Two**

Plaintiff alleges that Defendants had an obligation to search P&G's and the Plan's

records to produce:

> (a) all documentation memorializing communications between Plaintiff and
> Defendant P&G pertaining to his request for information about the existence
> or pendency of a voluntary separation plan prior to his effective date of
> retirement, and (b) all documentation memorializing the conceptualization,
> planning, development, actualization and implementation of the voluntary
> separation plan.

(Doc. 1 at ¶ 40).   The DOL claims regulation, however, defines documents "relevant" to a

claim for benefits to exclude Plaintiff's requested documents relating to the consideration

or adoption of the Plan:

> (8) A document, record, or other information shall be considered ''relevant''
> to a claimant's claim if such document, record, or other information
> (i) Was relied upon in making the benefit determination;

(ii) Was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination; …

29 C.F.R. § 2560.503-1(m)(8).[2]   In promulgating its definition of "relevant," the DOL sought to eliminate any "burden on plans to search their records for any information relevant in the broadest sense to the claim, whether it was in any way related to the actual claims process." *Employee Retirement Income Security Act of 1974; Rules and Regulations for Administration and Enforcement; Claims Procedure*, 65 F.R. 70246, 70252 (Nov. 21, 2000).

The Complaint does not dispute that the Plan produced all documentation relied on by the Committee in issuing its denial of Plaintiff's claim for benefits under the terms of the Plan or "submitted, considered, or generated in the course of making the benefit determination," as required by 29 C.F.R. § 2560.503-1(m)(8)(i) & (ii).   Also, the DOL's claims regulation, 29 C.F.R. § 2560.503-1, applies only to a "claim for benefits under the plan."   29 U.S.C. § 1133(1); *see also Balmert v. Reliance Std. Life Ins. Co*., 601 F.3d 497, 502 (6th Cir. 2010).[3]   Plaintiff, however, brings no action "to recover benefits due to him under the terms of the [P]lan. …" ERISA § 502(a)(1)(B), *codified at* 29 U.S.C. § 1132(a)(1)(B).

---

[2] The last two subsections of the DOL's claims regulation are inapplicable.   29 C.F.R. § 2560.503-1(m)(8)(iii) & (iv).

[3] Plaintiff alleges that the DOL claims regulation implements 29 U.S.C. § 1133.   (*See* Doc. 1 at ¶ 44).

Moreover, Count Two is also appropriately dismissed as to Defendants P&G and

the Committee because the DOL's claims regulation imposes requirements on the Plan, not

on the plan sponsor (*i.e.*, P&G) or the plan administrator (*i.e.*, the Committee) to provide

documents during the administrative process involving a claim for benefits under the terms

of the Plan. *See, e.g., Jordan v. Tyson Foods, Inc*., 312 Fed. Appx. 726, 736 (6th Cir.

2008). In *Jordan*, the Sixth Circuit rejected the contention that either the plan sponsor or

the plan administrator had a duty to provide documentation to a plan participant under the

claims regulation. *Id*. Instead, in affirming judgment for the defendant, the court held

that only the Plan itself was required to provide such documentation. *Id.*

Finally, Plaintiff seeks statutory damages under "29 U.S.C. [§] 1132(c)(1)(B) which

provides for a plan administrator to pay an employee beneficiary $[110] per day for each

day it unlawfully refuses to provide upon the employee's request information deemed

produceable [sic] 'by this subchapter.'" (Doc. 7 at 19). However, as the Sixth Circuit

has held, "cases in other circuits have rejected the argument that § 1132(c) statutory

damages are available for violations of regulations implementing § 1133." *Jordan*, 312 F.

Appx. at 735.[4] In this Circuit, "a violation of section 1133 by the plan administrator does

---

[4] *See also Stuhlreyer v. Armco, Inc*., 12 F.3d 75, 79 (6th Cir. 1993) (no statutory penalty available for breach of DOL's claims regulation); *Vanderklok v. Provident Life & Accident Ins. Co*., 956 F.2d 610, 618 (6th Cir. 1992) (same); *Groves v. Modified Retirement Plan*, 803 F.2d 109, 117 (3d Cir. 1986) (same); *Gillespie*, 2011 U.S. Dist. LEXIS 13295 at *7 (same); *Nationwide Children's Hosp., Inc. v. D.W. Dickey & Son, Inc*., No. 2:08-cv-1140, 2010 U.S. Dist. LEXIS 3316, at *29-42 (S.D. Ohio Jan. 15, 2010) (same); *Cortez v. Prudential Ins. Co*., No. 1:08-CV-315, 2008 U.S. Dist. LEXIS 93891, at *6-13 (W.D. Mich. Sept. 19, 2008) (same); *Giertz-Richardson v. Hartford Life & Accident Ins. Co*., No. 8:06-cv-1874-T-24MAP, 2007 U.S. Dist. LEXIS 26369, at *5-6 (M.D. Fla. Apr. 10, 2007) (same).

not impose liability on the plan administrator pursuant to section 1132(c), because duties of the 'plan' as stated in section 1133 are not duties of the 'plan administrator' as articulated in section 1132(c)." *Vanderklok*, 956 F.2d at 618. In short, no Defendant is liable for any 29 U.S.C. § 1132(c)(1)(B) statutory penalty, even assuming *arguendo* that there was a violation of the DOL's claims regulation, 29 C.F.R. § 2560.503-1. As the Supreme Court held last year, "the penalty for failure to meet [the requirements of the DOL's claims regulation] is immediate access to judicial review for the participant." *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 134 S. Ct. 604, 614 (2013) (citing 29 C.F.R. § 2560.503-1(l)).

As a result the above, Count Two is also appropriately dismissed.

## IV. CONCLUSION

Wherefore, based on the foregoing, Defendants' Motion to Dismiss (Doc. 6) is hereby **GRANTED**, Plaintiff's claims are **DISMISSED**, the Clerk shall enter judgment accordingly, and this case is **CLOSED**.

**IT IS SO ORDERED.**

Date:  5/22/14                                                      */s/ Timothy S. Black*
                                                                       Timothy S. Black
                                                                       United States District Judge